UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | )   CR. No. 05-10096 RGS |
| | ) |
| v. | ) |
| | ) |
| ELQUI RODAS-ARANGO | ) |
| | ) |
| Defendant | ) |
| | ) |

**DEFENDANT'S SENTENCING**

**MEMORANDUM**

    Now comes the Defendant, Elqui Rodas-Arango, through his undersigned attorneys and files this sentencing memorandum.

**BACKGROUND**

    In 1985 at the age of ten the Defendant along with his parents entered the United States legally. The Defendant entered as a Lawful Permanent Resident.

    On or around September 20, 1994 the Defendant was arrested for assault and battery on Maria Nieves, the Defendant's girlfriend at the time and mother of the Defendant's two children. On or around November 15, 1994, the Defendant pled guilty to the charges. At the time the Defendant was advised by counsel that pleading "guilty" would be the most expeditious way of dealing with his arrest. Immigrations and Customs Enforcement used this conviction as a basis for deporting Defendant back to Guatemala in March of 1998.

Defendant had also been arrested in May of 2004 in connection with an assault and battery on an Abraham Cetina. That case was continued without a finding ("CWOF") by the state court but as a result of Defendant's aforementioned guilty plea in November of 1994 the May CWOF automatically resulted in a guilty finding.

In March of 1996 the Defendant pled guilty to Assault and Battery on John Freitas and Disorderly Conduct charges arising from the same March 1996 incident.

In February of 1996 the Defendant was found guilty of assault and battery on Maria Nieves and violation of a restraining order.

Defendant was under the influence of alcohol in most if not all of these arrests. Also in each arrest the Defendant was advised the most expeditious method in addressing the charges would be either a plea of guilty or agreeing to a finding of guilty. None of these additional charges were used by Immigration or Customs Enforcement in its deportation of Defendant.

At some point the Defendant illegally re-entered the United States. Using an alias, Alex Berrios, Defendant was arrested in December of 2000 in Charlestown on charges of possession of Class D. Defendant was released and defaulted on those charges.

In August of 2001 again under the alias, Alex Berrios, the Defendant was arrested in Denton, Texas on charges of Driving While Intoxicated. The Defendant ultimately fled the jurisdiction. In March of 2005 Defendant was arrested under the name Alex Berrios in Chelsea in connection with outstanding warrants related to the above charges. When fingerprinted Defendant was confirmed to be Elqui Marconi-Rodas and was taken into custody by ICE. .

### The Presentence Report

The Defendant submits that the presentence report ("PSR") properly calculated the guideline range for the Defendant. The PSR determined the total offense level to be Level 21 with a criminal history category of III. The sentencing table provides a range of 46-57 months. The Defendant has served over 10 months in custody since his arrest.

### Sentencing Under *Booker*

In *United States v. Booker*, 125 S. Ct. 738, 756 (2005) the Court found the provisions of the Federal Sentencing Reform Act of 1984, that make the guidelines

mandatory, 18 U.S.C. Section 3553(b)(1) or which rely upon the Guideline's mandatory nature, 18 U.S.C. Section 3742(e), incompatible with its prior Sixth Amendment holdings, *Id*. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory", *Id* at 757.  The Court is no longer bound by the sentencing guidelines and *Booker* "requires a sentencing court to consider guideline ranges, see 18 U.S.C. Section 3553(a)(4), but it permits the court to tailor sentences in light of other statutory concerns as well, see Section 3553(a)," *Id* .   Thus under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. Section 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2".  Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the Defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense, and the history and characteristics of the defendant (Section 3553(a)(1));

2) "the kinds of sentences available" (Section 3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (Section 3553(a)(6)).

**Application of the Statutory Sentencing Factors to the Facts of this Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

    **(a) Nature and Circumstances of Offense**

    Defendant illegally re-entered the United States as a previously deported alien.

    **(b) History and Characteristics of Defendant Rodas-Arango**

The Defendant has not had an easy life. Defendant spent his first ten years amidst poverty and violence in war torn Guatemala. In 1985 as a result of the serious threat posed to his family by the war Defendant's Father caused the entire family to legally enter the United States in 1985. The Defendant along with his family settled in Chelsea, Massachusetts. From the day he first arrived in the Chelsea the Defendant because of his poor immigrant background was the victim of verbal and physical abuse. Defendant always attempted to defend himself. When Defendant was under the influence of alcohol these confrontations often became physical. Defendant's parents worked full-time upon their arrival in Chelsea in 1985. Defendant's parents and siblings ultimately became United States citizens. Defendant attended Chelsea schools and completed two years at Chelsea High School. After high school Defendant worked a number of jobs from busboy to construction. When Defendant was in the country legally the Defendant paid taxes and filed tax returns. Defendant has two minor children a son age 15 and a daughter age 13. At all times Defendant provided for his children financially. Defendant also paid his parents' rent. Because Defendant's entire family moved to the United States in 1985 Defendant knew no one upon returning to Guatemala. Defendant found Guatemala to be a violent and dangerous country upon his return. In fact Defendant knows very little Spanish. Defendant also missed his children and felt he had an obligation to provide financial and emotional support. Given these factors the Defendant made the ill-advised decision to return to the United States illegally. As you can see from the attached letters written in support of Defendant he did make contributions to society while in the United States.

    **(c) The Sentencing Factors**

The Defendant has served over 10 months in custody. Serving further time in Federal custody will only serve to prolong the inevitable at the taxpayer's expense. Defendant should be sentenced to time served and deported to Guatemala.

In determining the Defendant's sentence the Defendant submits the sentence of time served is reasonable and is sufficient but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a).

### The Sentencing Calculation

While the Defendant agrees with the calculations in the PSR the Defendant would like to point out that the 16 level increase for prior aggravated felonies in illegal re-entry cases resulted from a statutory amendment which, according to the legislative history, was based on the representation that "these felons" have a history of involvement in syndicates involving drug trafficking, money laundering, racketeering, weapon sales, murder, and prostitution, see 133 Cong. Rec. Sec. 4992-01 (1987). The Defendant in no way is attempting to minimize his criminal record however this Defendant does not fit that alleged profile set forth in the legislative history and a guideline sentence resulting from this increase is greater than necessary to receive just punishment.

### Conclusion

For the reasons stated the Defendant Rodas-Arango requests this court to impose a ten month sentence.

                                                             Respectfully submitted
                                                             **Elqui Rodas-Arango**
                                                             By his attorneys
                                                              /s/ *Albert F. Cullen, Jr.*
                                                              BBO# 107900
                                                             /s/ *Albert F. Cullen, III*
                                                             BBO# 561223
Dated: January 30, 2006                         60 K Street, Boston, MA 02127

I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

                                                              /s/ ***Albert F. Cullen, Jr.***
                                                              Albert F. Cullen, Jr.

**EXHIBIT LIST**

1. **November 28, 2005 Letter from Mas Ichida**
2. **January 18, 2006 Letter from Jennifer Wolfson**
3. **November 15, 2005 Letter from Olivier Meys**
4. **January 18, 2006 Letter from Robert E. LaVallee**
5. **January 13, 2006 Letter from Michelle Orman**
6. **November 23, 2005 Letter from Yuko Isome**
7. **Letter from Gutierrez Brown**
8. **Janaury 13, 2006 Letter from David Bosch**

November 28, 2005

To Whom It May Concern;

I first met Marconi Rodas in 1993 in a program called City Year, a Boston-based community service program. We were both members of the same team that was responsible for rebuilding houses for the under-privileged, feeding the homeless, cleaning public streets and parks, and running an after-school program for children. What initially attracted me to and impressed me about Marconi was that he had a genuine interest to help others who were less fortunate than himself even though he himself led a difficult life. After our year of working closely together, we have remained good friends and we still continue communications fifteen years later. Although I now live in NYC, I still consider Marconi to be one of my closest friends and confidants. I have always admired Marconi's well-intentions, humor, and good nature. Marconi is extremely intelligent and good-hearted, yet it seems that his strong will occasionally steers him on the wrong path.

I am a teacher and dean in a public school in Harlem, New York and for many years I have asked Marconi to move to NYC to have a better life, however, he has always refused as he did not want to leave his family in Chelsea. My fondness of and respect for Marconi stems from his commitment to his family and his great abilities as a father figure.

I am confident that Marconi will be an asset to his community if he is offered another chance. He has written me numerous times from jail and has confided that he has understood the mistakes he has made and feels his maturity will keep him from unlawful activities in the future. Marconi is one of the finest men I have ever met. I have relied on him on many occasions to help me get through my own personal problems. His caring and loving nature is a rare characteristic that I have not seen in many other people.

Yours truly,

Mas Ichida

January 18, 2006

Dear Judge Stearns,

My name is Jennifer Wolfson and I am a second-year law student at Northeastern University School of Law.

I have known Marconi Rodas since the early 1990s, when my then-boyfriend met him through their participation in City Year, an urban peace corps. Initially, the two clashed, but they soon worked through their differences and became best friends.

Shortly thereafter, my boyfriend introduced me to Marconi. I had never met anyone from Marconi's walk of life before—a young Latino from a poor, immigrant family. Marconi was, and is, wonderful—warm, funny and generous with a contagiously positive outlook on life. He was, and is, an incredibly supportive friend to Masuo, and his friendship has had a tremendously positive impact on Masuo's life. Masuo is already planning a trip to visit him in Guatemala.

I know that Marconi broke the law by reentering the United States and has several prior convictions on his record, and I understand that deportation is mandatory. I urge you, however, to be lenient in his sentencing.

Thank you,

*Jennifer Wolfson*
Jennifer Wolfson
42 Calvin St; 3L
Somerville, MA 02143

Olivier Meys
Hepingli 5qu 4haolou 6-301
Beijing – China
PC :100013
Tel :00861084228959
Mob :008613911015150

Beijing, November 15th, 2005

**To whom it may concern :**

I undersigned Olivier Meys, belgian citizen, declare the following :

I Have met Marconi during the years 1992, 1993 in Boston (MA). At that time I was working as a volunteer in City Year (a community services organisation), as he was.

I met Marconi very quickly after my arrival in City year, thru a friend of mine named Masuo Ichida.

We did'nt work in the same « team », but we often see each other in group activities, and after work.

At that time my english was quite poor, and to tell the truth I was feeling a little lost in that stranger city. Marconi since the first day met, was always very kind and attentive to me. Meaby because he was himself arrived in the states from somwhere else ; he always tried to welcome me, to make me feel good and secure.

He even invited me in his family. The neigbourhood where he used to live was'nt very secure, and without asking, he proposed to pick me up at the station and drive me back home. He had really that sense of hospitality, the sense of taking care of someone ; like an old brother.
I still remember him verry proud to present his children to me, hoping they would have a better life then his one…

Of course Marconi appeared sometimes a little rough to those who did'nt know him, but that was more a question of timidity and self-protection. For those who made the effort to go toward him, they always was surprised to find a sweet guy.

I really remember him as a sensitive, kind hearted man ; who was trying what he could, in a not so easy context of living.

Today I'm currently living and working in Beijing (China) as a filmaker and producer. I hope someday beeing able to go back to the United states of America to see my old friends living there ; and Marconi is defenetly on of them !

I don't know if that statement would help my friend in anyway, but I swear that what I wrote is thrue.

Olivier Meys

January 18, 2006

Re: Marconi Rodas Letter of Character

To Whom It May Concern:

    Marconi Rodas was a member of my City Year team from September of 1992 to June of 1993. In that capacity, he worked with a group of ten young people in full-time community service. Our work included sorting food at the Greater Boston Food Bank, running an after school program in Egleston Square and doing pre-construction work on a half-way house for women and their children. The work was hard, the pay was low and the hours were long.

    As his Team Leader, I was gratified to see that despite the handicaps of a poor education, speaking English as a second language and being a young parent, he was an enthusiastic participant in the daily service. He made an important contribution to his community that year. Please consider his year of voluntary community service in his sentencing.

Sincerely,

Robert E. LaVallee
171 South St. 2b
Boston, MA 02130



January 13, 2006

To the Honorable Judge Stearns:

I'm writing in reference to Marconi Rodas, who I met in Boston in 1993 through a mutual friend. Marconi and I spent a lot of time together throughout my stay in Boston while I attended Boston University and I always found him to be sweet, friendly and generally a great guy to hang out with. Whenever I needed something—whether help moving furniture or someone to talk to—I always knew that I could count on Marconi. Though I am aware that Marconi has gone through his fair share of difficulties with the law, I remain impressed with his strength of character and his genuine desire to better himself. I am confident, if given the opportunity, Marconi will take every step to improve the quality of his life and in so doing he will likely make a great contribution to society.

Sincerely,

Michelle Orman
President

www.LupRocks.com        1133 Broadway, Suite 1314        (212) 924-5588
                          New York, NY 10010



November 23, 2005

Dear Sir or Madam:

My name is Yuko Isome. I have been living in United state since 1997. I graduated from Boston University in May 2001 and have been working in biotech company called Arqule, Inc in Woburn MA since my graduation with H1B visa status. I have known Marconi Elke Rodas since 1999. He is kind, friendly, generous, caring, loving and artistic person. His 2 children, Jerica and Marconi Jr., both live in Chelsea, MA. With their mother and he would love nothing more than to be able to remain in the United States so that he can be near his children and allow them the chance to grow up with their father around. I have known him to be very ambitious and I am sure that, given the chance, he would be a very productive member of society. He is very charitable and helps people while expecting nothing in return. One year I took Marconi up on his offer to help me move from one location to another in Boston during September (which is pure madness with the 20k plus college students moving into the city) and if that does not prove what a generous person he is, I do not know what will. I hope that this letter will give you somewhat of an idea of what a good person Marconi is and that you will consider allowing him to remain in this great country.

Sincerely,

Yuko Isome

Dear Judge Stearns:

My name is Odir Gutierrez Brown, I graduated from the New England School of Photography in 2004.

I met Marconi six years ago at a restaurant that we worked for, through all these years I've found in Marconi an honest and hardworking friend, a person of good heart, Intelligent, always wanting to learn new things.

We used to go fishing, camping and it was amazing to see his survival skills.

We've had conversations about life, future plans, also about mistakes we've made in the past and how much we want to better for ourselves.

The only thing that I wish now is for him to be given another chance.

Thank you for taking the time to read my words.

Odir Gutierrez Brown.

January 13, 2006

I'm writing you today on behalf of Marconi Rodas. I have been informed that my friend Marconi's situation has escalated. Please take my words under advisement so that they may correct or lessen the severity of the matter at hand.

I highly recommend Marconi as a valuable member of our society. We have been friends for years and has been, in a word, invaluable.

Over the years he has made an incredible difference in the day-to-day obstacles of past projects. He is extremely special and an extraordinary person.

I would be sincerely disappointed for him to go through any more struggles.

I can safely state that helping Marconi would be the best personnel decision you will make this year. He is really worth it.

Please feel free to contact me if you would like any further information. I would be happy to speak with you on his behalf.

Best- David

David Bosch
111 President St. #3
Brooklyn, NY 11231
718-909-0911